IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT LINMAN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

MARTEN TRANSPORT, LTD,

    Defendant.

OPINION and ORDER

22-cv-204-jdp

---

This proposed class action arises from a cyberattack on defendant Marten Transport, Ltd. Plaintiff Scott Linman alleges that Marten's failure to adequately protect its computer network allowed cybercriminals to steal information that included full names and social security numbers of individuals who applied to work at Marten, current employees, and former employees. The parties informed the court that they settled the case in principle. Now before the court is Linman's unopposed motion for preliminarily approval of the settlement. Dkt. 32. The court will deny the motion without prejudice to allow Linman to address the concerns discussed below.

**First**, the parties have not provided a clear, objective definition of the proposed class. Before a court may approve a proposed class settlement, the court must certify that the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23, including the requirement that the class be "defined clearly" using "objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). The parties' settlement agreement defines the proposed class as follows:

> the individuals identified on the Class List whose certain personal information may have been involved in the Data Incident who does not timely elect to be excluded from the Class. Excluded

> from the Class are: (1) the judge presiding over this Action, and members of his direct family; (2) Marten, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; and (3) Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

Dkt. 32-2, at 3. The parties define "Class List" as "a list of each Class Member's full name, current or last known address which Marten or Marten's agent shall provide to the Settlement Administrator within fourteen (14) days of the entry of the Preliminary Approval Order" and "Class Member" as "an individual who falls within the definition of the Class." *Id.* at 3–4.

These circular definitions fail to set out objective criteria for determining who is in the class. The definition of the class appears to be "the individuals identified on the Class List whose certain personal information may have been involved in the Data Incident." But the definition of "Class List" does not provide any objective criteria to determine class membership. Instead, it refers to "Class Members," which is defined in turn by referring to the definition of "Class." This creates two problems. First, the definition of the class depends on the method that will be used to identify its members, which appears to be Marten putting an individual's name on a list. Second, the definition limits class membership to those who "may have been involved in the Data Incident," which defines the class based on the claim's success on the merits. Membership in the class should not depend on Marten's liability. *Mullins*, 795 F.3d at 660.

The notice and claim forms further confuse the definition because they contain inconsistent statements about who is eligible to submit claims. For instance, the first page of the notice says, "To be eligible to make a claim, you *must have received a notice letter* of the Marten Data Incident that occurred in the fall of 2021," but the third page says, "You are affected by

the Settlement and potentially a member of the Class if you reside in the United States and your Private Information may have been compromised in connection with the Data Incident, *including if you were mailed a notification* by or on behalf of Marten . . . regarding the Data Incident." Dkt. 32-2, at 30, 33 (emphasis added); *see also* Dkt. 32-2, at 22, 48–49 (claim forms containing similar statements about eligibility). The parties should clarify what objective criteria define the class and explain how Marten will identify the individuals that meet those objective criteria.

**Second**, Linman does not explain how the parties came up with the proposed settlement amount. This makes it impossible for the court to make even a preliminary determination regarding whether the settlement is fair.

Under the agreement, Marten is to pay $520,000 to establish a common settlement fund, which will be used to pay attorney fees, litigation expenses, an incentive award to Linman, the cost of notice and administrative expenses, and payments to class members. The settlement agreement and Linman's brief in support of the motion for preliminary approval estimate the following amounts for fees and expenses:

- $173,333.33 for attorney's fees;
- $15,000 for litigation expenses;
- $44,000 for administrative costs; and
- $5,000 for Linman's incentive award.

Dkt. 32-2, at 15 and Dkt. 33, at 12. Payments to class members will consist of (1) compensation for documented out-of-pocket losses up to a total of $5,000 per class member, (2) compensation for up to 5 hours of lost time at $25 per hour, and (3) a pro rata cash

3

payment of any remaining funds, which is estimated to be $50 per class member but could be higher or lower depending on what funds remain after all the other distributions.

Linman provides general information about the mediation process by which the parties reached a settlement but does not explain how they calculated the settlement amount. In most cases, plaintiffs' counsel will calculate or estimate the maximum amount of damages the class could recover based on the plaintiffs' theory of the case, and then explain why the discount in the proposed settlement is a reasonable one. The parties have not done that here.

Nor has Linman explained how the parties estimated $50 as the residual pro rata cash payments to class members. The settlement agreement and notice make it clear that the value of the cash payments, if any cash payments are made, will depend on how much of the settlement fund is left after all other payments. Claims for out-of-pocket losses and lost time will be paid out before residual cash payments. But the parties have not provided any information about how many class members they estimate will file claims, how many of those they estimate will file claims for out-of-pocket losses, or what they expect the average class member's share of the settlement will be.

**Third**, Linman does not explain why a $5,000 incentive award is appropriate for the named plaintiff. In determining an appropriate amount for an incentive award, a court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In this case, class counsel describes the named plaintiff's contributions to the case only in general terms, making it difficult for the court to evaluate whether the proposed award is appropriate. See Dkt. 34, ¶ 11 (Linman "stayed informed about this litigation, responded to

4

Defendant's discovery requests, reviewed, and approved the settlement demand and final settlement amount and Settlement Agreement, and spent substantial time and effort protecting the Class's interests."). The requested amount isn't extraordinarily high, but it's high enough relative to the typical recovery by class members to require the parties to justify it.

**Fourth**, Linman does not explain the proposed method of distributing relief to the class. The settlement agreement states that the settlement administrator, Analytics Consulting, LLC, will be responsible for distributing the settlement fund, which will "be deemed to be in the custody of the Court shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement." Dkt. 32-2, at 8, 11. The settlement agreement also contains a provision for what will happen if funds remain after settlement payments are sent out because recipients "fail to cash and/or deposit their settlement payments." *Id.* at 6–7. But the settlement agreement does not specify the process that Analytics will use to distribute the settlement payments, other than to say payments will be "made via mailed check and/or electronic payment." *Id.* at 7. This is insufficient information for the court to assess the effectiveness of the proposed method of distributing settlement payments to the class. The parties should address what process Analytics will use to distribute payments, including whether and how Analytics will attempt to locate addresses for class members whose checks are returned as undeliverable, what type of electronic payments Analytics will use, and how long the distribution process will take.

**Fifth**, the information Linman provided about attorney fees is both flawed and insufficient to support a motion for attorney fees. The settlement agreement says that class counsel will ask for an award of attorney fees that does not exceed one-third of the settlement agreement, which it specifies is $173,333. But the total amount that the defendant pays is not

5

the proper denominator when assessing attorney fees under the percentage-of-recovery method in this circuit. "The ratio that is relevant to assessing the reasonableness of the attorney's fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). This means that: (1) costs are not included in the denominator when assessing the reasonableness of attorney fees; and (2) the percentage is based on the actual recovery of the class. When class counsel moves for attorney fees, the parties should identify the amount of the settlement fund that will go to the class members.

Class counsel's motion for attorney fees must also comply with the court's procedures for fee petitions, which is included in the attachments to the preliminary pretrial conference order. Dkt. 18. Although counsel is relying on the percentage-of-recovery method to justify their fee request, this court requires a lodestar cross check to ensure that the fee award is not an unreasonable windfall. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). Counsel must provide a properly documented and supported explanation of its fees, as provided in the court's procedures for fee petitions. Dkt. 18.

**Sixth**, Linman's motion for preliminary approval relies on an outdated standard for approving a class settlement agreement. Dkt. 33, at 20–21 (citing *In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) and *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014)). Rule 23 was amended in 2018 to enumerate the factors that courts must consider before approving a settlement. *See* Fed. R. Civ. P. 23(e)(2). Linman's renewed motion should focus on those factors.

**Seventh**, the parties must address several issues with the proposed notice and claim forms. First, as discussed above, the notice and claim forms do not provide a consistent or clear

definition of the class. The parties must modify the notice and claim forms to state the class definition accurately and consistently.

Second, the notice and claim forms contain misleading statements about the total amount of money that will be distributed to class members who file claims. The first section of the notice states that payments to members will be from "a proposed $520,000 non-reversionary class action settlement." Dkt. 32-3. at 30. But it doesn't explain how that amount is to be divided up, leaving that issue for other sections of the notice. Similarly, the description of what the settlement provides states that Marten "will fund the following payments up to total of $520,000" but leaves for the end of the next paragraph the explanation that attorney fees, expenses, and the costs of administrating the settlement will be deducted from the settlement fund. *Id.* at 33. This section is misleading because payments to the class will not equal the total settlement fund. The parties should modify the notice to state clearly that fees, expenses, and administrative costs will be deducted from the settlement fund, as they have done in the claim forms. *See id.* at 22, 49.

Third, the proposed notice suggests that class members who file a claim will receive a $50 cash payment without clearly informing recipients that the dollar value is an estimate. Specifically, the notice and long claim form initially say the residual pro rata cash payment will be $50 and only later explain that the amount will be adjusted based on how much of the settlement fund is distributed to other types of claims. *See* Dkt. 32-3, at 23, 24, 30, and 33. But the $50 value is necessarily an estimate that depends on the size of the class and number of class members who submit claims for out-of-pocket losses and lost time. The notice and claim forms should clearly convey that any dollar amount listed for the residual class payment is the parties' estimate based on the number and type of claims class members file.

7

**Eighth**, Linman has not sufficiently explained what process Analytics will use to validate and update addresses when it sends out notice. Linman's brief in support of its motion says that Analytics will use "databases tracking nationwide addresses and address changes," Dkt. 33, at 27, and the declaration from Analytics says that the company will research addresses for postcard notices that are returned as undeliverable, Dkt. 35. But neither Linman nor Analytics explains what the process for researching and updating addresses will entail. In addition, the settlement agreement suggests that the parties may have email addresses for some class members and that those individuals will also be sent notice via email, but Linman provides no further details about how the notice program will incorporate those emails. The parties will need to show that they made all reasonable efforts to provide notice to all members of the class.

**Ninth**, the parties must comply with 28 U.S.C. § 1715(b)'s requirement that counsel give notice of the class settlement to certain state and federal officials. The settlement agreement states that Marten is responsible for providing this notice, but Marten has not informed the court whether it has done so, and the court must wait 90 days after notice is provided before approving the settlement.

ORDER

IT IS ORDERED that:

1. Plaintiff Scott Linman's unopposed motion for certification of a class and for preliminary approval of the settlement, Dkt. 32, is DENIED without prejudice.

2. Linman may have until December 8, 2023, to file an amended motion addressing the concerns raised in this order.

Entered November 16, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge