IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT LINMAN, on behalf of himself and all others similarly situated,

                    Plaintiff,

v.

MARTEN TRANSPORT, LTD,

                    Defendant.

OPINION and ORDER

22-cv-204-jdp

---

      This proposed class action arises from a cyberattack on defendant Marten Transport, Ltd. Plaintiff Scott Linman alleges that Marten failed to adequately protect its computer network, which allowed cybercriminals to steal information that included full names and social security numbers of prospective, current, and former Marten employees. On November 16, 2023, the court denied without prejudice Linman's unopposed motion for preliminary approval of the parties' proposed settlement and asked the parties to address numerous concerns. Dkt. 36. In response, the parties amended their proposed settlement and Linman has filed a renewed motion for preliminary approval of the settlement agreement. Dkt. 37.

      The court is persuaded that certification and preliminary approval is appropriate, and the court will also approve the proposed class notice. So, the court will grant Linman's amended motion for preliminary approval, direct the parties to send notice to the collective and class members, set a deadline for a motion for final approval, and set a date for a fairness hearing.

ANALYSIS

A. **Class certification**

Approval of the state-law class certification is governed by Federal Rule of Civil Procedure 23. There are three requirements for class certification under Rule 23: (1) the class must be clearly defined with objective criteria, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must satisfy the threshold requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b). The court concludes that Linman has satisfied each of the relevant Rule 23 requirements:

**Class definition.** In response to the court's order denying Linman's first motion for preliminary approval of the settlement, the parties have revised the settlement to define the class as "individuals who received or were sent notice from Defendant Marten Transport, Ltd.'s September 30, 2021 to October 4, 2021 Data Incident." Dkt. 39-1, at 3. This revised definition is clear and uses objective criteria.

**Numerosity.** There are 35,511 potential members of the class, which is numerous enough to make joinder impractical. *See* Fed. R. Civ. P. 23(a).

**Commonality, typicality, and adequacy of the named plaintiff.** The claims in this case turn on whether Marten's took adequate measures to protect its network from cyberattacks. Common questions of law or fact concerning Marten's policies will resolve the allegations of the entire class. The court sees no apparent conflicts between Linman's interests and those of the rest of the class, and he has claims that are typical of the class. So these requirements are met.

**Adequacy of class counsel.** Class counsel have significant experience litigating and obtaining settlements for similar class and collective actions. *See* Fed. R. Civ. P. 23(g)(1); Dkt. 39, ¶¶ 3, 15. The court will approve Nathan D. Prosser of Hellmuth & Johnson, M. Anderson Berry of Clayeo Arnold, A Professional Corp., and Terence R. Coates of Markovits, Stock & DeMarco, LLC as class counsel.

**Predominance and Superiority.** Linman contends that this action satisfies Rule 23(b)(3), which requires that the action's common questions of law or fact predominate over questions that affect only individual members, and that the controversy would best be resolved through a class action. To determine whether common questions predominate, the court considers (1) the class members' interests in individually controlling their own claims; (2) the nature and extent of any other litigation about the controversy; (3) the desirability of concentrating the litigation here; and (4) any management challenges that the case may present. Fed. R. Civ. P. 23(b)(3).

The main issue in this case is whether Marten failed to adequately protect the data on its network. The answer to this question will be the same regardless of the identity of individual class members, so the court concludes that common questions predominate over individual ones. A class action is superior to other methods of adjudicating the case because the large size of the class (35,511 class members) and the small amount of damages for each class or collective member makes individual lawsuits impractical. *See* Fed. R. Civ. P. 23(b)(3).

**B. Preliminary approval**

The court may grant preliminary approval when the court concludes that it "will likely be able to" give final approval to the settlement, applying the factors listed in Rule 23(e)(2).[1] These include the adequacy of relief to the class, the relative fairness of the settlement for each class member, and the reasonableness of the attorney fees. Fed. R. Civ. P. 23(e)(2).

The court raised several concerns about the proposed settlement in its previous order: (1) Linman did not explain how the parties arrived at their settlement figure, and Linman provided no metric for determining the fairness of the settlement; (2) Linman did not explain how the estimated $50 pro rata payment to each class member was calculated; (3) the parties did not justify the incentive award for the class representative; (4) Linman did not explain the proposed method of distributing relief to the class; and (5) Linman provided flawed and insufficient information about attorney fees. The court is satisfied that Linman addressed these concerns.

Under the agreement, Marten is to pay $520,000 to establish a common settlement fund, which will be used to pay attorney fees, litigation expenses, an incentive award to Linman, the cost of notice and administrative expenses, and payments to class members. The amended

---

[1] One of the concerns raised in the court's previous order was that Linman did not discuss the factors enumerated in the 2018 amendment to Rule 23 that courts must consider. *See* Fed. R. Civ. P. 23(e)(2). Linman's amended motion for preliminary approval still relies on an outdated standard for approving a class settlement agreement. Dkt. 38, at 21–22 (citing *In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) and *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014)). The other revisions in the amended motion provide sufficient information for the court to grant preliminary approval notwithstanding Linman's citation of the old standard, but Linman's motion for final approval of the settlement should focus on the factors identified in the current version of Rule 23.

4

settlement agreement and Linman's brief in support of the amended motion for preliminary approval estimate the following amounts for fees and expenses:

- $152,000 for attorney's fees;
- $15,000 for litigation expenses;
- $44,000 for administrative costs; and
- $5,000 for Linman's incentive award.

Dkt. 38, at 9–13 and Dkt. 39-1, at 5, 7, 15. The remainder of the common settlement fund ($304,000 if the court awards the estimated amounts in fees and expenses) will be distributed to class members. Payments to class members will consist of (1) compensation for documented out-of-pocket losses up to $5,000 per class member, (2) compensation for up to 5 hours of lost time at $25 per hour, and (3) a pro rata cash payment of any remaining funds, which is estimated to be $50 per class member but could be higher or lower depending on what funds remain after all the other distributions. If there are any unclaimed funds after payments are distributed to class members who submitted claims because of uncashed checks or failed electronic payments and if efforts by the settlement administrator to locate an address for those individuals, then the remaining funds will be sent to a court-approved charitable organization as a cy pres distribution. None of the common settlement fund will revert to Marten.

As for the first two concerns that the court raised, Linman provided additional information about how the parties reached the settlement amount and why they estimate that the pro rata payment to class members will be $50. Specifically, the amended declaration of class counsel Terence Coates explains that the $520,000 common fund proposal came from the mediator the parties selected, who has experience mediating similar data breach class actions. Dkt. 39, ¶ 6. Class counsel assessed this proposal based on other recent settlements in

5

class action data breach cases. *Id.*, ¶ 16. Linman contends this is the best way to evaluate an adequate settlement amount because no data breach cases have resulted in a verdict or summary judgment, and it is difficult to precisely quantify the relatively small injuries to individual class members and to show that this specific data incident caused those injuries. Dkt. 38, at 23–24.

The estimate of a $50 pro rata payment to class members who file claims is also based on class counsel's experience in similar settlements in data breach cases that distributed a common fund to class members with claims for out-of-pocket losses, lost time payments, and a pro rata cash payment. Class counsel specifically describes three recent settlements in which the claims rates were between six and 10 percent. In one of the example cases, there were no valid claims for out-of-pocket loss payments, and in the other two the total out-of-pocket loss payments were not more than $3,000, with the bulk of the settlement distributions going to lost time payments and higher than estimated pro rata payments.

Past settlements are not necessarily a measure of how many claims class members will make in this case, and Linman does not explain how the settlement administrator will handle distributions if the claims for out-of-pocket losses and lost time payments exceed the available settlement fund. But in the absence of other methods to assess the value of the class members claims, it is reasonable to look to past settlements to evaluate the adequacy of the proposed settlement amount and to estimate the projected claim rate for this case. The court concludes that the relief appears to be adequate and to fairly distribute relief to different members of the class compared to the example settlements that Linman cites. The parties' motion for final approval of the settlement should include detailed information about the claims that the settlement administrator receives for the court to assess the fairness of the settlement.

As for the incentive award, Coates's amended declaration provides additional details about Linman's role in the case. Coates says that Linman "has expended considerable time and energy undergoing several hours of plaintiff vetting and reviewing, editing, and verifying pleadings and allegations." Dkt. 39, ¶ 12. Coates also says that Linman responded promptly to counsel's communications, proactively reached out to counsel about the status of the case, worked with counsel to respond to discovery requests, and reviewed and approved the terms of the settlement agreement. *Id.* These assertions that Linman expended considerable time and effort on this case are sufficient for the court to preliminarily approve the $5,000 incentive award.

As for the method of distribution of relief, Linman submitted an amended declaration from the president of the settlement administrator, Analytics Consulting, LLC, that explains how Analytics will distribute payments to class members who submit claims. Dkt. 40, ¶¶ 32–37. Class members who submit claims online will have the option to receive an electronic payment through one of four common electronic payment types or to receive a physical check. Class members who submit hard copy claim forms will receive a physical check. The distribution will occur on a single day after approval of the settlement. If any electronic payments fail, a physical check will be sent 45 days after the initial distribution so that the payment platforms have time to return the funds to Analytics. Analytics will check and verify addresses before sending out checks using three different resources used by the United States Postal Service for address verification. If any checks are returned as undeliverable, Analytics will attempt to find an updated address using third-party databases that draw on phone, consumer credit, utility, DMV, property, and court records to provide consumer information for more than 110 million households in the United States. Analytics anticipates that this

process will be completed no more than 180 days after the effective date of the settlement. The court concludes that this distribution method seems reasonable and effective.

As for attorney fees, the amended settlement agreement revises the amount of attorney fees that class counsel will seek to address the court's concern. The amended settlement agreement specifies that attorney fees will not exceed one-third of the net settlement agreement, which is defined as the total settlement fund minus administrative expenses, litigation expenses, and the service award. Dkt. 39-1, ¶¶ 29, 84. This means that the portion of the settlement that goes to costs will not be included when calculating the attorney fees, as required under the percentage-of-recovery method in this circuit. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). Linman's amended motion also includes a current lodestar total, which this court requires as a cross check to ensure that the fee award is not an unreasonable windfall. The revised proposed attorney fees appear reasonable, but class counsel's motion for attorney fees must comply with the court's procedures for fee petitions, which require that counsel provide proper documentation for fee requests, including contemporaneous logs with separate entries for the hours spent on specific tasks. Attachment to Dkt. 18, at 39.

## C. Notice

Rule 23(c)(2) requires that notice sent to class members must plainly state the nature of the action, the definition of class, the issues in the case, that class members have the option to appear through an attorney, that class members have the option to be excluded from the class settlement (and how they can exercise that option), and the binding effect of judgment on members who are not excluded. The court raised concerns about details in the notice and claims forms as well as a concern that Linman did not sufficiently explain the process that the

settlement administrator will use to validate addresses for sending notice and the eventual relief. The court is satisfied that Linman's revised submissions addressed these concerns. In addition, Marten has now complied with 28 U.S.C. § 1715(b)'s requirement that counsel give notice of the class settlement to certain state and federal officials. Dkt. 41.

As for the court's concerns with the notice, the amended claim form, long notice, and short notice now provide a consistent definition of the class as those individuals who were previously sent notice that their information was included in the September to October 2021 cyberattack on Marten. The amended notices also contain revisions that remove the misleading statements about the total amount of money that will be distributed to the class members and the estimated $50 pro rata payments.

As for the court's concern about the method used to research addresses for notices returned as undeliverable, Analytics provided specific information about the three third-party databases that it will use. As discussed above, the databases draw on phone, consumer credit, utility, DMV, property, and court records to provide consumer information. This seems to be a reasonable method for researching invalid addresses, but the parties' motion for final approval of the settlement will need to show that they made all reasonable efforts to provide notice to all members of the class.

### D. Deadlines and fairness hearing

Analytics may have until June 27 to disseminate notice to the class, after which class members will have 60 days to opt out of the Rule 23 class or file objections and 90 days to file claims. The settlement administrator will have until September 5 to provide a list of objections and exclusions to the court and the parties and will have until October 9 to provide a list of initially approved and rejected claims to the parties. The parties may have until October 28 to

file a motion for final approval addressing the factors in Rule 23(e)(2). Class counsel may have until October 28 to file a motion for attorney fees; defendant may have until November 4 to respond. The court will hold a fairness hearing on December 5, at 10:00 am.

ORDER

IT IS ORDERED that:

1. The following class is certified under Federal Rule of Civil Procedure 23: "All individuals who received or were sent notice from Defendant Marten Transport, Ltd.'s September 30, 2021 to October 4, 2021 Data Incident."

2. The court approves Nathan D. Prosser of Hellmuth & Johnson, M. Anderson Berry of Clayeo Arnold, A Professional Corp., and Terence R. Coates of Markovits, Stock & DeMarco, LLC as class counsel.

3. Plaintiff's amended motion for preliminary approval of the settlement, Dkt. 37, is GRANTED.

4. The claims administrator may have until June 27, 2024, to send out the class notices, giving members 60 days to opt out of the class or file an objection and 90 days to file a claim.

5. The parties may have until October 28, 2024, to file a motion for final approval and a motion for fees and costs.

6. The court will hold a fairness hearing on December 5, 2024, at 10:00 am.

Entered June 13, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge