## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **SCOTT LINMAN**, on behalf of himself and all others similarly situated,<br><br>       Plaintiff,<br><br>   v.<br><br>**MARTEN TRANSPORT, LTD.**,<br><br>       Defendant. | Case No.: 3:22-cv-00204-jdp<br><br>Judge District James D. Peterson<br><br>Magistrate Judge Stephen L. Crocker |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AMENDED UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

**I.** **SUMMARY OF THE LITIGATION** ……………………………………………… 1

**II.** **THE TERMS OF THE SETTLEMENT AGREEMENT** ………………………………... 2

    A.  The Settlement Class ………………………………………………………………... 2

    B.  Settlement Benefits………………………………………………………………... 2

    C.  Notice and Claims Process ……………………………………………………………... 3

    D.  Objections and Requests for Exclusions ……………………………………………….. 4

    E.  Attorneys' Fees, Expenses, and Service Awards ………………………………………. 4

**III. ARGUMENT** ……………………………………………………………………… 4

    A.  Final Class Certification for Settlement Purposes is Appropriate ………………………. 4

        1.  The Elements of Rule 23(a) Are Satisfied …………………………………… 5

            a.  The Class of 34,681 Satisfies Numerosity……………………………………... 5

            b.  Commonality is Satisfied ………………………………………………… 6

            c.  Typicality is Satisfied …………………………………………………….... 6

            d.  Plaintiff and Class Counsel Adequately Represent the Class ……………… 7

        2.  The Requirements of Rule 23(b)(3) are Met in the Settlement Context ………... 8

    B.  The Notice Program Preliminarily Approved by the Court was the Best Notice
        Practicable under the Circumstances, and was Resoundingly Successful ……………... 9

    C.  The Settlement Agreement Merits Final Approval…………………………………... 11

            a.  Plaintiff's Case was Risky and the $520,000 Settlement Fund is a
               Substantial Recovery……………………………………………………… 12

            b.  The Complexity, Expense, Likely Duration of the Litigation, and
               Substantial Risk for Plaintiff Warrants Final Approval of the Settlement .... 12

            c.  The Class Overwhelmingly Supports the Settlement and Opposition to the
               Settlement is Nonexistent ………………………………………………… 14

            d.  Class Counsel and Plaintiff Support the Settlement …………………………15

            e.  Plaintiff Obtained Ample Information to Forge the Substantial Settlement
               Fund …………………………………………………………………... 16

            f.  Plaintiff obtained Ample Information for Forge the Substantial Settlement
               Fund…………………………………………………………………… 16

g.   The Other Rule 23(e) Factors Support Final Approval of the Settlement ....... 17

**IV.  CONCLUSION** ............................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

**Supreme Court**

*Amchem Prods. V. Windsor*, 521 U.S. 591 (1997) ……………………………………………… 9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ………………………………………………………………….. 9

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ……………………………………… 10

**Federal Court**

*Am. C.L. Union v. U.S. Gen. Servs. Admin,*
    235 F. Supp. 2d 816 (N.D. Ill. 2002) …………………………………………………… 14

*B. Sanfield, Inc. v. Marshall Field & Co.,*
    No. 90 C 20192, 1991 WL 166942 (N.D. Ill. Feb. 25, 1991) …………………………… 12

*Bedont v. Horizon Actuarial Servs., LLC*,
    No. 1:22-CV-01565-ELR, 2022 WL 3702117 (N.D. Ga. May 12, 2022) …………….................. 14

*Chester v. TJX Cos*, No. 5:15-cv-01437-ODW (DTB)
    2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) …………………………………………….. 12

*Desue v. 20/20 Eye Care Network, Inc.*,
    No. 21-CIV-61275-RAR, 2023 WL 4420348 …………………………………………… 5

*Elzen v. Advisors Ignite USA LLC,* No. 22-C-859,
    2024 WL 195473 (E.D. Wis. Jan. 18, 2024) …………………………………………….... 5

*Elzen v. Advisors Ignite USA LLC*, No. 22-C-859,
    2024 WL 3593678 (E.D. Wis. Jun. 12, 2024) …………………………………………… 5

*Eirhart v. Libbey-Owens-Ford Co.*,
    1990 WL 223029, 921 F.2d 278 (7th Cir. 1990) ………………………………………… 9

*Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP
    (W.D. Wis. Sep. 16, 2020) ……………………………………………………………….. 6

*Garner v. Healy*, 184 F.R.D. 598 (N.D. Ill. 1999) ……………………………………….. 7

iii

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Pages**

*Gautreaux v. Pierce*,
   690 F.2d 615 (7th Cir. 1982) …………………………………………………….......... 14

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE),
   2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ……………………………………….. 13

*Hunter v. Booz Allen Hamilton*, No. 2:19-cv-00411,
   2023 WL 3204684 (S.D. Ohio May 2, 2023) …………………………………………….......... 13

*In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253-JPS,
   2024 WL 3357730 (E.D. Wis. July 10, 2024) ………………………………………… 5, 9, 11

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ……………………………………………………… 12, 13

*In re Forefront Data Breach Litig.*, No. 21-cv-887,
   2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ...............................................................................14

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ……………………… 14

*In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021) …………………... 7

*In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022) …………....... 11

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017) …………………………………………………………... 13

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) …………………………………………………………… 13

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) …………………………………………………………13

*McFields v. Dart*,
   982 F.3d 511 (7th Cir. 2020) …………………………………………………………... 6

*Messner v. Northshore Univ. Health Sys.*,
   669 F.3d 802 (7th Cir. 2012) …………………………………………………………... 8

*Muro v. Target Corp.*,
   580 F.3d 485 (7th Cir. 2009) …………………………………………………………... 7

*Remijas v. The Neiman Marcus Grp., LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019) ………… 6

*Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993) ……………………………… 7

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Pages**

*Ross v. Gossett*, 33 F. 4th 433 (7th Cir. 2022) ……………………………………………… 9

*Schellhorn v. Timios, Inc*., No. 2:21-cv-08661, 2022 WL 4596582
   (C.D. Cal. May 10, 2022) …………………………………………………………….. 15

*Shy v. Navistar Int'l Corp.*,
   No. 3:92-CV-00333, 2022 WL 2125574 (S.D. Ohio June 13, 2022) ……………………….. 10, 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, (2011) …………………………………………………………………..6

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ………………………………………………………… 11

**Rules**

Fed. R. Civ. P. 23 ……………………………………………………………………… 1
Fed. R. Civ. P. 23(a) …………………………………………………………………… 4, 5
Fed. R. Civ. P. 23(a)(3) ………………………………………………………………… 6
Fed R. Civ. P. 23(a)(4) ………………………………………………………………… 7
Fed. R. Civ. P. 23(b)(3) …………………………………………………………… passim
Fed. R. Civ. P. 23(c)(2)(B) …………………………………………………………… 9, 10
Fed. R. Civ. P. 23(e) …………………………………………………………… passim
Fed. R. Civ. P. 23(e)(2) ……………………………………………………………… passim
Fed. R. Civ. P. 23(e)(2)(C)(ii) ………………………………………………………… 17
Fed. R. Civ. P. 23(e)(2)(C)(iii) ………………………………………………………… 17
Fed. R. Civ. P. 23(e)(2)(C)(iv) ………………………………………………………… 17
Fed. R. Civ. P. 23(e)(2)(D) …………………………………………………………… 17

**Other Authorities**

    Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain*

*Language Guide,* (2010)…………………………………………………………… 10

<u>**MEMORANDUM**</u>

Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Scott Linman ("Linman" or "Plaintiff"), individually and on behalf of the Proposed Class ("Class Members" or "Class"), respectfully submits this memorandum of law in support of his Amended Unopposed Motion for Final Approval of Class Action Settlement ("Motion"). Unless otherwise stated, all definitions herein are the same as in the Amended Settlement Agreement ("S.A."), **<u>ECF No. 39 Ex. 1</u>**.

## I.    <u>SUMMARY OF THE LITIGATION</u>

Plaintiff Scott Linman initiated this Lawsuit on April 11, 2022 against Defendant Marten Transport, LTD ("Marten" or "Defendant") alleging damages arising from the 2021 Data Security Incident experienced by Defendant that potentially impacted approximately 34,681 individuals including their full names and Social Security numbers. S.A. ¶ 46. (the "Data Incident"). Plaintiff's Complaint alleges causes of action for: (1) Negligence; (2) Breach of Implied Contract; (3) Invasion of Privacy; (4) Breach of Confidence; and (5) Unjust Enrichment. Defendant filed a Motion to Dismiss on June 1, 2022 (ECF No. 14) which was granted in part and denied in part on March 17, 2023. Thereafter the Parties engaged in active arm's length negotiations culminating in a June 20, 2023 mediation with experienced data breach class action mediator Bennett G. Picker, which led to the instant Settlement. Plaintiff Linman filed his Unopposed Motion for Preliminary Approval of Class Action Settlement on August 18, 2023 (ECF No. 33), and, his Unopposed Amended Motion for Preliminary Approval of Class Action Settlement on December 8, 2023 (ECF No. 38). This Court granted Plaintiff's Amended Motion on June 13, 2024 and appointed Nathan D. Prosser of Hellmuth & Johnson, M. Anderson Berry of Clayeo C. Arnold, A Professional Corp., and Terence R. Coates of Markovits, Stock & DeMarco, LLC as class counsel (ECF No. 44).

## II.     THE TERMS OF THE SETTLEMENT AGREEMENT

### A.  Settlement Class

Pursuant to Federal Rule of Civil procedure 23(b)(3) and the terms of the Settlement Agreement, the Settlement Class (the "Class") is defined as:

> the individuals who received or were sent notice from Defendant Marten Transport, Ltd's September 30, 2021 to October 4, 2021 Data Incident. Excluded from the Class are: (1) the judge presiding over this Action, and members of his direct family; (2) Marten, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers and directors; and (3) Class Members who submit a valid Request for Exclusion prior to the Opt-Out-Deadline.

S.A., ¶ 12. There are approximately 34,681 individuals in the Class. *See* Declaration of Settlement Administrator Regarding Notice ("Analytics Decl."), ¶ 7.

### B.  Settlement Benefits

In accordance with the Settlement Agreement—and upon final approval—a non-reversionary Settlement Fund in the amount of $520,000 will be created. The Settlement Fund will provide for: (1) a cash payment to each Class Member submitting a valid claim under the Settlement, with such payments increased or decreased *pro rata* after the payment of any documented Out-of-Pocket Losses as identified below, and for attorneys' fees, expenses, and the Notice and Administrative Expenses (S.A., ¶ 56(i)); reimbursement of up to $5,000 per Class Member for documented Out-of-Pocket Losses that are fairly traceable to the Data Incident (S.A., ¶ 56(ii)); compensation for lost time at a rate of $25 per hour for up to 5 hours (*Id.*, ¶ 56(iii)). Additionally, the Settlement Fund will be used to pay for any attorneys' fees, expenses, service award, and the cost of Settlement Administration, as approved by the Court. *Id.*, ¶ 58-61, 82; *see also* Plaintiff's Motion for Attorneys' Fees, Expenses, and Class Representative Service Award ("Fee Motion")(ECF Nos. 45-50).

### C.  Notice and Claims Process

Analytics Consulting LLC ("Analytics") was selected as the Settlement Administrator in this matter. S.A., ¶ 45. Analytics executed an extensive Notice Program, providing direct notice via U.S. Mail with the Postcard Notice previously approved by this Court. Analytics Decl., ¶ 7. Additionally, Analytics created a Settlement Website on which it posted notice of the settlement, including all relevant documents for this matter and which allowed Class Members to make a claim electronically. *Id.* ¶ 9. During the Claims Period the Settlement Website received 1,328 views from 828 unique visitors. *Id.* Analytics also created a toll-free telephone line and a dedicated email box was created where Class Members could learn about their rights and responsibilities in the litigation. *Id*. ¶ 10. During the claims period this toll-free telephone line has received 25 calls.

The notice program was overwhelmingly successful. Of the 34,681 Postcard Notices mailed, 6,582 "bounced back" as undeliverable and Analytics was able to successfully remail 2,803. *Id.* ¶ 12. Thus, the notice program achieved a reach of 89.1%. *Id.* ¶ 12. This is consistent with the Federal Judicial Centers Guidelines, which recommend direct notice to 70-95% of the Class in order to satisfy due process requirements. *Id.* The Claims Deadline was September 25, 2024 and as of October 23, Analytics received 2,024 claims, of which only 19 were filed by non-Class Members, leaving 2,005 potentially valid claims. *Id*. ¶ 15. So far, Analytics has reviewed and validated 1,942 of those claims leading to a valid claim rate of roughly 5.59%.

Of the valid claims that have been received 936 totaling $102,200.00 have been for reimbursement for Lost Time, and none of the 231 claims for out-of-pocket loss reimbursement have been deemed valid, although those claimants have an opportunity to fix the deficiencies. *Id*. ¶ 16.  There have been 1,862 claims for the *pro rata* monetary benefit. *Id.* Analytics calculated that, after subtracting up to $44,708.00 for its Administration expenses and fees and the

$152,000.00 requested as attorneys' fees, together with the $10,898.25 requested as litigation expense reimbursement, and the $5,000 requested as a service award for Plaintiff, there would remain a balance of $205,193.75 in the Settlement Fund to distribute to claimants of the *Pro-Rata Cash Benefit*, leading to a *pro rata* payment of $110.20 per Class Member who submitted a claim for such benefit. *Id*. ¶ 17.

### D.  Objections and Requests for Exclusion

The claims process was structured to provide all Settlement Class Members with sufficient time to review the terms of the Settlement Agreement and submit a claim, object to the Settlement, and/or opt-out of the Settlement. The Notice Program provided Class Members until August 26, 2024 to opt-out or object to the Settlement. *Id*. ¶ 13. To date, out of 34,681 Class Members, the Claims Administrator has received only three exclusion requests and no objections. *Id*. ¶¶ 13-14. These total exclusions and objections represent only 0.008% of the Settlement Class.

### E.  Attorneys' Fees, Expenses, and Service Awards

As seen in the previously filed Motion for Attorneys' Fees, Expenses, and Service Award for Representative Plaintiff (Fee Motion) Plaintiff requested this Court award attorneys' fees in the amount of $152,000.00 which is 29.23% of the Settlement Fund which represents 33.1 % of the Net Settlement Fund of $459,393.75 ($520,000 – $44,708 for Administration, $10,898.25 in expense reimbursement and $5,000 in Class Representative Service Award).

## III.   ARGUMENT

### A.  Final Class Certification for Settlement Purposes is Appropriate

This Court preliminarily approved class certification for settlement purposes in its June 13, 2024 Order. ECF No. 44. In that order, the Court thoroughly analyzed the factors supporting class certification under Rule 23(a) and (b). The material facts underlying the Court's conclusions have

not changed. Absent an objection, new material facts, or a change in law, courts typically refrain from disturbing class certification at the final approval stage. *See, e.g., In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253-JPS, 2024 WL 3357730, at *5 (E.D. Wis. July 10, 2024) ("The Court has no independent basis to question whether final certification of the class as previously defined or appointment of Plaintiffs as class representatives … is appropriate. Accordingly, the Court does not disturb its earlier finding that the settlement class in this matter meets the requirements of Rule 23(a) and (b) and that Plaintiffs are appropriate class representatives."); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *6 (S.D. Fla. July 8, 2023) ("Nothing has occurred in the interim to disturb the Court's conclusion that this case meets the prerequisites of Rule 23(a) and (b)(3), and certification for settlement purposes is appropriate.").

### 1. The Elements of Rule 23(a) Are Satisfied

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Fed. R. Civ. P. 23(a). Here, all four elements are readily satisfied.

### a. The Class of 34,681 Satisfies Numerosity

Rule 23(a)(1) requires that plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." "While there is no bright-line rule for numerosity, there is little question that a class of more than 14,000 is sufficiently numerous under Rule 23(a)(1)." *Elzen v. Advisors Ignite USA LLC,* No. 22-C-859, 2024 WL 195473, at *3 (E.D. Wis. Jan. 18, 2024) (*vacated on other grounds Elzen v. Advisors Ignite USA LLC*, No. 22-C-859, 2024 WL 3593678, at *1 (E.D. Wis. Jun. 12, 2024) (internal citations omitted). Here, there are 34,681 Class Members, easily satisfying the numerosity requirement.

5

### b. Commonality is Satisfied

Rule 23(a)(2) requires showing the existence of questions of law or fact common to the class that are susceptible to common answers. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Common questions exist where the "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "For purposes of Rule 23(a)(2) even a single common question will do." *Id*. at 359. Here, Plaintiff's claims turn on whether Marten's security environment was adequate to protect Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from Class Member to Class Member, and so can be fairly resolved—at least for purposes of settlement—for all Class Members at once. Courts in this Circuit have previously addressed this requirement in the context of cybersecurity incident class actions and found it readily satisfied. *See Remijas v. The Neiman Marcus Grp., LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP (W.D. Wis. Sep. 16, 2020). Thus, the commonality requirement is satisfied.

### c. Typicality is Satisfied

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "Generally, a class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *McFields v. Dart,* 982 F.3d 511, 517 (7th Cir. 2020) (internal citations and quotations omitted). While "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the

same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted); *see also Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (finding typicality satisfied where plaintiffs, like the class, "believed that they were getting something more than they ultimately received").

Typicality seeks to ensure that there are no conflicts between the class representative's claims and the claims of the class members represented. Here, the claims all involve Defendant's conduct toward the Class Members, and Linman's and the Class's claims are based on the same legal theories. Thus, Plaintiff's claims are typical of those of the claims of the Class, and for purposes of settlement he is an appropriate Class Representative.

### d.  Plaintiff and Class Counsel Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The test for assessing adequacy of representation under Rule 23(a)(4) "has two components: (1) 'the representative must not possess interests with are antagonistic to the interests of the class,' and (2) 'the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation.'" *In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) (internal citations omitted); *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993). Here, Plaintiff and Settlement Class Counsel are adequate representatives of the Class. Plaintiff has no conflicts with the Class and has actively participated in the case including the settlement process. *See* Declaration of Scott Linman in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Class Representative Service Award ("Linman Decl.) ECF No. 50; Declaration of Terence R. Coates in Support of Motion for Attorneys' Fees, Expenses, and Class Representative Service Award ("Coates Fee Decl.") ECF No. 47 ¶ 29; Coates Prelim Decl. ¶¶ 12-13. Plaintiff Linman has submitted a declaration in support

of this Settlement. *See* Linman Decl. Moreover, Class Counsel have significant experience in class and complex litigation, including hundreds of data privacy class actions in state and federal courts throughout the country. Class Counsel Declarations ECF Nos. 47-49.

### 2.   The Requirements of Rule 23(b)(3) are Met in the Settlement Context

Plaintiffs seek to certify a Class for settlement purposes under Rule 23(b)(3), which has two components: predominance and superiority. Predominance is established if "common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in single adjudication." *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations omitted). With respect to superiority, the Court considers whether "a class action is superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In this case, the common factual and legal questions all cut to the issues central to the litigation, namely, whether Marten adequately protected the Private Information of Plaintiff and Class Members. The claims at issue here are all based on uniform conduct regarding a single data incident that affected all proposed settlement class members in similar fashion, and or the same amount of time. Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go to the root of the controversy, and the answers will be the same for each Class Member. Because the class-wide determination of these issues will be the same for everyone and will determine whether any Class Member has a right of recovery, the predominance requirement is readily satisfied.

///

///

///

Likewise, the superiority requirement is readily satisfied.[1] The Settlement would relieve the substantial judicial burdens caused by repeated adjudications in individual trials against Marten. *See Ross v. Gossett*, 33 F. 4th 433, 440 (7th Cir. 2022) (affirming the trial court's finding that "a class action would serve the economies of time, effort and expense and prevent inconsistent results."). Adjudicating individual actions is impracticable. The amount in dispute for each Class Member is too small, the technical issues relating to data security are too complex, and the required expert testimony and document review would be far too costly. The individual prosecution of Class Members claims would be prohibitively expensive, and, if filed would needlessly delay resolution and potentially lead to inconsistent rulings.

### B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances, and was Resoundingly Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2)(B). This rule necessitates that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members wo are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete discretion" as to the manner of service of settlement notice. *See Eirhart v. Libbey-Owens-Ford Co.*, 1990 WL 223029, 921 F.2d 278, at *1 (7th Cir. 1990).

The Court preliminarily approved the Notice Program, consisting of a single postcard notice with a "tear off" claim form, whose language was approved by this Court, mailed to the

---

[1] "The Court need not consider whether the case would be manageable as a class action, as referenced in Rule 23(b)(3)(D), because that inquiry is unnecessary to certify a settlement-only class." *In re Advoc. Aurora Health Pixel Litig.*, 2024 WL 3357730, at *4 n.3, citing *Amchem Prods. V. Windsor*, 521 U.S. 591, 620 (1997).

mailing addresses Defendant had in its files for substantially all Class Members. *See* ECF No. 44 at p.8-9. As detailed *supra*, of the 35,511 mailing addresses Defendant had in its files, 34,681 were unique Settlement Class Member records (830 were duplicate records) which Analytics updated through cross-referencing those addresses with the United States Postal Service's National Change of Address database. Analytics Decl. ¶¶ 5-6.  Any Notices returned with forwarding addresses were re-mailed at the forwarding address, and all Notices returned undeliverable without forwarding addresses were then run through the "skip trace" process detailed in the Amended Declaration of Richard W. Simmons of Analytics Consulting LLC in Support of Proposed Notice Program (ECF No. 40) which this Court approved (*See* ECF No. 44 at p.9*)*. Analytics Decl. ¶ 12. Such efforts resulted in the Notice reaching 30,902 Settlement Class Members, or 89.1 percent of the total Class. *Id.* A notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022), citing Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide,* at 3 (2010).

The Notice Program provided Class Members with a clear and concise statement of their rights as this Court preliminarily approved. ECF No. 40-3 Exhibits C and D; ECF No. 44. The notices were also posted to the Settlement Website.[2] The Notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how to opt out of or object to the Settlement. *Id*. The Court should find that the Class received the best notice practicable under the circumstances in compliance with Rule 23 and the Due Process Class. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

---

[2] https://martendatasettlement.com/wp-content/uploads/2024/06/Linman_Notice_06282024.pdf; https://martendatasettlement.com/wpcontent/uploads/2024/06/LinmanMarten_DoublePostcardNotice.pdf

## C.  The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The Seventh Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offered; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) the stage of proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal citations omitted). "This analysis does not focus on individual components of the settlement, but rather views it in its entity in evaluating its fairness." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 933 (N.D. Ill. 2022) (internal quotations omitted).

The 2018 amendments to Rule 23(e) also contain specific elements for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include whether:

A.  the class representatives and class counsel have adequate represented the class;
B.  the proposal was negotiated at arm's length;
C.  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreements required to be identified under Rule 23(e)(3); and
D.  the proposal treats class members equitably.

*Id.* "However, Congress stated that these factors were not intended to 'displace' any of the tests devised by the courts of appeals." *In re Advoc. Aurora Health Pixel Litig.*, 2024 WL 3357730, at *7 n.6, quoting Advisory Committee Notes on the 2018 Amendments to Fed. R. Civ. P. 23(e)(2).

All the case law and 23(e) factors weigh in favor of granting final approval here.

### a. Plaintiff's Case was Risky and the $520,000 Settlement Fund is a Substantial Recovery

Plaintiff believes he has a strong case for liability and that he would able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security, which caused the exposure of Plaintiff's and Settlement Class Members' Private Information. Although Plaintiff believes he has strong claims and would prevail at trial, success is not guaranteed.  This is illustrated even by the fact that this Court's Order on Defendant's Motion to Dismiss substantially narrowed the scope of Plaintiff's claims. Furthermore, Plaintiff faces risks given the comparatively novel nature of data breach class actions. Additionally, Defendant will vigorously defense the reasonableness of its data security measures. "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW (DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017).

Compared to these risks the $520,000 Settlement Fund is a substantial recovery for the 34,681 person Settlement Class, representing a per-Class Member recovery of $14.99, and allowing for a *pro rata* Cash Payment of $110.20 for every Class Member who submitted a claim for such, and a full recovery of all of the valid claims for all other settlement benefits as well. Analytics Decl. ¶¶ 17-18.

### b. The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiff Warrants Final Approval of the Settlement.

Class action cases are inherently complex and risky. *B. Sanfield, Inc. v. Marshall Field & Co.,* No. 90 C 20192, 1991 WL 166942, at *2 (N.D. Ill. Feb. 25, 1991) (noting that "[c]lass action lawsuits are inherently complex"); *In re Austrian & German Bank Holocaust Litig*., 80 F. Supp. 2d

164, 174 (S.D.N.Y. 2000); *Hunter v. Booz Allen Hamilton*, No. 2:19-cv-00411, 2023 WL 3204684, at * 6 (S.D. Ohio May 2, 2023). While nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class action in an especially risky and still comparatively novel area. Although nearly all class actions involve a significant risk, expense, and complexity—undergirding the judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a complex class due the standing challenges plaintiffs face in data breach litigations. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Cases impacting similarly broad groups and implicating data far more sensitive than that at issue here have been found wanting by district courts. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Liti*g., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *rev'd in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide judgment remains unforged, particularly in the area of damages. Data breach cases are among the riskiest and most uncertain of all class action litigation, making settlement the prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound, remain untested in disputed class certifications and unproven in front of a jury. As in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

While Plaintiff is confident in the strength of his claims, he is also pragmatic and aware of the various defenses available to Defendant, as well as the risk inherent to continued litigation. Defendant has consistently denied the allegations raised by Plaintiff and has made it clear that it will continue to vigorously defend this case. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all. The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a

claim and delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor also favors granting final approval.

### c.   The Class Overwhelmingly Supports the Settlement and Opposition to the Settlement is Nonexistent

In another data privacy settlement, the court found that the class favored the settlement when 137 of the 2.4 million class members opted out of the settlement, one class member objected, and the claims rate was 1.46%. *In re Forefront Data Breach Litig*., No. 21-cv-887, 2023 WL 6215366, at * 4 (E.D. Wis. Mar. 22, 2023). In comparison, this litigation includes 34,681 class members, but only 3 opt-outs, a valid claims rate of 5.59%, and, perhaps most importantly, zero Settlement Class Members have objected to the proposed Settlement. *See* Analytics Decl. ¶¶ 14-15, 17. The scarceness of objectors challenging the Settlement is particularly noteworthy and strongly supports a finding that the Settlement is "fair and reasonable." *Am. C.L. Union v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 819 (N.D. Ill. 2002); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlements and finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements … is strong circumstantial evidence in favor of the settlements"). Here, no Class Member objected and only three opted out, resulting in an exclusion rate of 0.008%.

### d.   Class Counsel and Plaintiff Support the Settlement

In the Seventh Circuit, courts are "entitled to rely heavily on the opinion of competent class counsel." *Geatreaux v. Pierce*, 690 F.2d 615, 634 (7th Cir. 1982) (internal quotation and citation omitted). Many courts have recognized Class Counsel's experience in handling class action cases, including privacy class actions in particular. *See, e.g., Bedont v. Horizon Actuarial Servs., LLC,* No. 1:22-cv-01565-ELR, 2022 WL 3702117, at *2 (N.D. Ga. May 12, 2022) (noting that class counsel in a data privacy class action, including Mr. Coates, "are well qualified to serve as Interim

14

Co-Lead Class Counsel and that they will fairly, adequately, responsibly, and efficiently represent all Plaintiffs in the cases in that role."); *Shy*, 2022 WL 2125574, at *4 ("Class Counsel, the law firm of Markovits, Stock & DeMarco, LLC, are qualified and are known within this District for handling complex cases including class action cases such as this one."); *Schellhorn v. Timios, Inc.*, No. 2:21-cv-08661, 2022 WL 4596582, at *4 (C.D. Cal. May 10, 2022) (noting that Class Counsel, including Messrs. Coates and Berry, "have extensive experience litigation consumer protection class actions ….").

As a result of informal discovery conducted, thorough case investigation, and extensive settlement negotiations including a full-day mediation session with highly skilled and respected private mediator Bennett G. Picker, Class Counsel are in a position to fully analyze the strengths and weaknesses of Plaintiff's claims and determine that the Settlement at this stage of the litigation is appropriate. Coates Prelim Decl. ¶¶ 6-7; Coates Fee Decl. 47 ¶ 30. In addition, Plaintiff supports this Settlement because it provides Class Members with immediate and substantial benefits. Linman Decl. ¶ 8. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### e. Plaintiff Obtained Ample Information to Forge the Substantial Settlement Fund

The Settlement was reached after Defendant produced responses to Plaintiff's settlement discovery requests, the Parties exchanged information adequate to evaluate the merits of this case, including, confirming the number of individuals impacted by the Data Incident, confirming that the types of information compromised are uniform for potentially all Class Members, discussing whether Defendant has email addresses for any Class Members, and evaluating other data breach settlements involving Social Security numbers and comparable class sizes. Marten also disclosed information relating to the cybersecurity enhancements implemented as a result of the Data

Incident. Plaintiff also understood that Marten worked extensively with the Federal Bureau of Investigations to respond to the Data Incident and to ultimately assist the shutting down of the hacker group responsible for this Data Incident and many other data breaches across the country.

With this information, and the results of their independent investigations into the Data Incident Plaintiff and Class Counsel were able to make informed decisions about the size of the Class, the merits of the Class's allegations and legal claims, and Defendant's financial resources available to pay for a settlement and/or judgment. *Id*. In conducting this due diligence, Plaintiff and Class Counsel have spent significant time and effort researching and preparing this case. *See* ECF Nos. 47-50. Thus, this factor supports final approval of the Settlement.

### f.    Plaintiff Obtained Ample Information for Forge the Substantial Settlement Fund

Even prior to filing the Complaint Plaintiff and Class Counsel undertook significant efforts to investigate the underlying Data Incident, which included consultations with data privacy experts. Coates Fee Decl. ¶ 8; Declaration of Nathan D. Prosser in Support of Motion for Attorneys' Fees, Expenses, and Class Representative Service Award ("Prosser Decl.") ECF No. 49 ¶ 5; Declaration of M. Anderson Berry in Support of Motion for Attorneys' Fees, Expenses, and Class Representative Service Award ("Berry Decl.") ECF No. 48 ¶ 12. With this information in hand Plaintiff and Class Counsel conducted additional legal and factual research that served as the basis for drafting the detailed Class Action Complaint. Coates Fee Decl. ¶ 8; Prosser Decl. ¶ 5; Berry Decl. ¶ 12. Plaintiff and Class Counsel also engaged in substantial formal discovery with Defendant. Coates Fee Decl. ¶ 8; Prosser Decl. ¶ 5; Berry Decl. ¶ 12. Additionally, in preparation for the mediation which resulted in the Settlement, Plaintiff and Class Counsel exchanged informal discovery with Defendant in order to ensure they were fully informed of the relevant facts before negotiating the Settlement. Coates Fee Decl. ¶ 8; Prosser Decl. ¶ 5; Berry Decl. ¶ 12. Plaintiff was

able to properly evaluate the potential for damages on a class-wide basis relating to Plaintiff's remaining negligence claim. Coates Preliminary Decl. ¶ 8. In conducting this due diligence, Plaintiff has spent significant time and effort researching and preparing this case. *See Generally* Coates Fee Decl.; Berry Decl.; Prosser Decl.; Linman Decl. Thus, this factor supports final approval of the Settlement.

### g.  The Other Rule 23(e) Factors Support Final Approval of the Settlement

To the extent not addressed above, the remaining Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easily as possible. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The attorneys' fees of one-third of the Net Settlement Fund (33.33%) or 29.23% if the whole fund are well within the range of reasonableness for fees in a case of this nature and will not be paid until after the Effective Date. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). There is no undisclosed agreement made in connection with the Settlement. *See* Rule 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity to have their lost time and out-of-pocket expenses reimbursed and for a *pro rata* payment of money. Rule 23(e)(2)(D). In total, all the factors to be considered when determining whether to grant final approval weigh in favor of finding that the Settlement is fair, reasonable, and adequate.

## IV.   CONCLUSION

Because the proposed Settlement is fair, reasonable, and adequate Plaintiff respectfully requests that the Court grant final approval of class action settlement, including permitting pro rata cash payments to Class Members who have submitted valid claims and awarding a Service Award in the amount of $5,000 to Class Representative Plaintiff, $152,000 in reasonable attorneys' fees;

$10,898.25 in litigation expenses; $44,708.00 in Settlement Administration expenses, and enter the proposed Order attached as **Exhibit 1**.

Dated: October 29, 2024                    Respectfully submitted,

/s/ *M. Anderson Berry*
M. Anderson Berry (*pro hac vice*)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
*aberry@justice4you.com*

Anne T. Regan
Nathan D. Prosser
**HELLMUTH & JOHNSON, PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952) 941-4005
Fax: (952) 941-2337
*aregan@hjlaw.com*
*nprosser@hjlawfirm.com*

Terence R. Coates (pro hac vice)
Dylan J. Gould (pro hac vice)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 651-3700
Fax: (513) 665-0219
*tcoates@msdlegal.com*

***Attorneys for Plaintiff and the Proposed Class***

18